IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES HENRY ROBINSON, JR.** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-2349 |
| | : | |
| **HOMESERVICES OF AMERICA, INC.,** | : | |
| *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

SÁNCHEZ, C.J.                                                                      OCTOBER 22, 2018

Plaintiff Charles Henry Robinson, Jr.*,* who is proceeding *pro se*, filed this civil action against Homeservices of America, Inc., Berkshire Hathaway Homeservices Fox & Roach Relators, and Fox & Roach/Trident LP, claiming that he was discriminated against in employment because of his race. (ECF No. 2.) He seeks leave to proceed *in forma pauperis.* (ECF No. 10.) For the following reasons, the Court will grant Robinson leave to proceed *in forma pauperis*, and dismiss his Complaint with leave to amend.

## I.     FACTS[1]

Robinson, who identifies as African-American and black, filed the instant civil action using the Court's form complaint for a plaintiff filing employment discrimination claims. By checking the appropriate locations on the form, Robinson indicates that he was subjected to harassment based on his race and/or color and that his employer retaliated against him. The Complaint does not clearly or briefly describe the events upon which Robinson's claims are based. Instead, Robinson has referred to various documents attached to his Complaint to state his claims. The documents to which Robinson refers total 339 pages comprised of copies of

---

[1] The following facts are taken from the Complaint and documents attached to the Complaint.

1

emails created during the course of Robinson's employment as an accounting clerk and documents related to administrative proceedings before the Pennsylvania Human Rights Commission (PHRC). It is challenging for a court to process a Complaint based almost entirely on voluminous exhibits, rather than on short and plain statements in numbered paragraphs as required by the Federal Rules of Procedure. Regardless, the Court has reviewed the exhibits in an effort to understand the events that give rise to this case.

The exhibits attached to the Complaint reflect that Robinson started working as an accounting clerk with HomeServices of America, Inc., an affiliate of Berkshire Hathaway and Fox & Roach Realtors, through a temp agency in 2012 and that he later became a permanent employee. (Compl. at 14.)[2] The gist of his employment discrimination claims appears to be that he was "spoken to condescendingly, [and] disrespectfully" by older, Caucasian employees, and that he was not "treated equally as [his] fellow co-workers." (*Id.* at 14.) Robinson suggests in his Complaint and exhibits that he dual filed a charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC) on August 27, 2014. (*Id.* at 6, 16-17.) It appears he amended his allegations to assert that he was constructively discharged due to a hostile work environment. (*Id.* at 88.)

Emails attached to Robinson's Complaint reflect that Robinson was the junior employee in the department and that he did not get along with two of his more senior co-workers, Diane Stringer and Colleen Ressler, both of whom are Caucasian. On March 9, 2013, Robinson wrote an email to supervisory employees or managers, to report that he was "beginning to get a little uncomfortable with the way Diane Stringer has been conveying things to [him] and what she [was] saying to [him]" because Stringer was allegedly explaining something in an "aggressive

---

[2] The Court adopts the pagination assigned to the Complaint by the CM-ECF system.

and controlling" way. (*Id*. at 23.) Robinson provided examples of statements allegedly made by Stringer with which he took issue, namely: (1) "Colleen doesn't know more than I do and I have been here just as long as she has"; (2) "As long as I've been here I have never made a mistake entering a check amount into DPN"; (3) a statement Stringer allegedly made to Ressler, "Why don't you get your assistant to do it" which presumably was a reference to Robinson. (*Id*. at 23-24.) Robinson's notes about a meeting with management reflect his belief that the Assistant Controller was not going to address the situation. (*Id*. at 27.)

On August 28, 2013, Robinson emailed Stringer, in response to an incident between the two of them, which reads as follows:

> I wanted to kindly ask you for future reference to please speak to me like you would like to be spoken to. This morning I understand there was an issue that you wanted to bring to my attention. I am completely fine with that; I just didn't appreciate the way you were speaking to me. I feel like you speak to me in a condescending and controlling manner which I believe isn't fair. I just wanted to let you know how I felt, and if you would like to speak one on one about it that [sic] fine with me as well.
>
> Other than that, I hope the issue from this morning is taken care of.

(*Id*. at 31.) Stringer responded to Robinson, stating that she

> Believe[d] you are confusing condescending with my irritation, disbelief and frustration about your failure to answer and take care of the situation yesterday. And then when I came over to your desk and quietly leaned in to explain what the issue was, I felt you were rude to me in that you would not even look at me or the paperwork that I was patiently trying to explain to you about. You kept your head down and continued working on your work. I said something to the effect that— Charles, do you hear me and please look at what I am trying to show you. I believe that was when you thought I was being condescending to you. Perhaps it came across that way, but you should have been professional enough to try to understand the problem and your errors without me having to ask you as an adult professional co-worker to realize what your fault in this was and the major confusion that you not wiring out funds were causing them at the settlement table. Instead, you just kept repeating that "I must have missed it (2 different emails a day apart) or about your being too busy and everyone makes mistakes and just to give the wire info to you and you would do the wire. Mistakes are going to happen."

3

> I am sorry that you feel I am being condescending, but I am just feeling frustrated that after a year you still have not corrected the email urgency. This answering the email situation has been addressed by both Colleen and I and you are still not answering emails with the urgency that they need to be addressed. When they are not answered and they come back to me, I need to bring it to your attention as you have requested of me in the past. You have been doing a good job but when you don't deal with a situation and people are at the table, it reflects badly on the three of us and the accounting department as a whole. We pride ourselves on being prompt with our responses and taking care of "problems" for the people in the offices.
>
> And yes, you are right, people make mistakes and sometimes things are overlooked, but because this has been an ongoing source of contention I would think you would make it a point to be more diligent with your response to emails.
>
> Emails are an integral part of our job here in escrow and need to be taken care of promptly.
>
> I hope this clears the air regarding this situation and that we can go on with a good working relationship.

(*Id*. at 33.) Robinson responded that he felt it was not the first time Stringer was being condescending, that he was committed to fixing his mistakes, that the problem she brought up did not "have to be a big deal," that he has been trying his best, and that he sought to work better together in the future. (*Id.* at 34.) He also expressed that he felt as though he was being put "in the middle of a battle" because Stringer and Ressler "bumped heads" in the work place. (*Id.*)

On November 7, 2013, Robinson sent an email to Ressler regarding a workplace incident that began when Ressler said to him "Charles, you need to pick up your phone." (*Id.* at 80.) Robinson stated that he did not mind Ressler "asking [him] to do things but the way [she] asked [him] is what [he] did not appreciate." (*Id.*) Ressler responded by email that she called Robison "several times yesterday and this [was] not the first time this has happened while [he] [had] his ear phones on [him] and apparently [he] [did] not hear or see the calls coming in." (*Id.*)

4

On January 8, 2014, Robinson emailed Stringer to let her know that he did not appreciate that she interrupted him during a conversation he was having in the kitchen with another coworker to inform him that he needed to let her know if he was going to be coming in late. (*Id.* at 84.) Again, Robinson asserted that he did not like the way Stringer was speaking to him "as if [she] had authority over [him] and it was condescending." (*Id.*)

It appears that the friction between Robinson and his coworkers continued. On February 22, 2014, Robinson wrote to Stringer about an incident that took place on February 19, 2014, when Robinson came in late and had emailed Stringer and Ressler about deposits needing to be done. (*Id.* at 36.) Robinson informed Stringer that he understood she was frustrated but that she "initially came off saying 'What the hell is the problem'" and that he did not appreciate being spoken to in that "disrespectful and unprofessional" manner. (*Id.*) Stringer emailed back, apologizing her for actions, and Robinson accepted the apology. (*Id.* at 37-38.)

On March 20, 2014, Robinson sent an email to Ressler about another incident in the workplace. The email reads as follows:

> Today when I kindly asked you to move your chair over a little so that I could put away your NJ bags. I know that you asked me to wait a minute and I understood.
>
> While I was waiting for your discussion to be done with Diane, I went over to my desk to process Diane's work.
>
> When you were done with your conversation with Diane, you said over the cubicle that I could put the bags away now.
>
> I believe it would have only taken you less than 30 seconds to put away your NJ bags but instead you called me back over to your cubicle to do it.
>
> I do know that we are all busy Colleen but I felt like your slave or something when you did this.
>
> I would like you to keep in mind that I work with you and not for you. I do not want to feel like I am your slave because that is not the case. I believe we should treat each other equally and with respect.

Thank you kindly Colleen and I hope you enjoy your day off and your weekend.

(*Id*. at 42.) In documents related to his administrative claims, Robinson also noted that Ressler "put her index finger up at [him]" during the incident when she asked him to "put her check bags away after she finished her non-work related conversation." (*Id.* at 87.) According to Robinson, Ressler allegedly threatened to "bring [Robinson] down" if he reported her. (*Id.*)

On April 9, 2014, Robinson reported to someone who appears to be a supervisor that while he was separating folders and bags, an employee named Mary "kicked over the bin that [he] was organizing" while walking from the printer to her desk. (*Id.* at 43.) The email reflects Mary stated that her "foot had gave out" but that Robinson believed she did it "out of frustration, and purposely." (*Id.* at 43.) Robinson stated that Mary should not be frustrated with him because they do not work together or speak frequently, and that he felt she was "disrespectful." (*Id.*) It appears Robinson also had an exchange with Ressler the same day, in which he accused her of raising her voice and using an improper tone with him in response to a question he asked about bank statements. (*Id.* at 49-50.)

The documents attached to the Complaint suggest that, at times during the course of these events, Robinson met with supervisors and/or managers regarding the situation. It also appears that Robinson requested a transfer to a different department. Documents prepared in connection with administrative proceedings reflect Robinson's allegation that one manager threatened to terminate his employment due to his complaints after a meeting in March of 2013. Dissatisfied with management's response, Robinson informed his employer on October 17, 2014, that he was leaving his position on October 31, 2014, because he "[has] not been pleased with the professionalism and behavior of [his] fellow coworkers." (*Id.* at 22.) He explained that he "[felt] that [he was] not a good fit for [his] position due to the way [he had] been treated the past

years" and complained that although he notified management of his interest "in other departments and alternatives . . . no action was taken." (*Id.*)

Robinson's documents suggest that he dual filed a charge or complaint of discrimination with the PHRC and EEOC. His claims appear to have been based on his interactions with Stringer and Ressler, as well as the incident with Mary and management's alleged lack of response to his concerns. He also explained that his workplace was "not very diverse regarding race, ethnic groups and cultures" and was "predominantly Caucasian employed." (*Id.* at 14.) On January 7, 2016, the PHRC issued a letter informing Robinson that he could pursue his claims in state court if he chose to do so. (*Id.* at 138.) On June 15, 2017, the PHRC issued a letter to Robinson informing him that after investigating his complaint, it found the evidence insufficient to show that any unlawful discrimination occurred. (*Id.* at 139.)

It appears that Robinson continued to pursue his claims on the administrative level by asking the EEOC to take over the investigation, but the specifics are unclear. He indicates in his Complaint in the instant civil action that the EEOC has not yet issued a Notice of Right to Sue Letter and that he "do[es] not recall receiving a Notice of Right to Sue Letter." (*Id.* at 6.) Robinson also indicated, by checking the appropriate location on the form complaint, that he brings his claims pursuant to the Pennsylvania Human Relations Act (PHRA), although his Complaint could also be liberally construed to assert claims under Title VII.[3]

---

[3] Robinson also suggests that he was discriminated against based on his age. The Age Discrimination in Employment Act applies to "individuals who are at least 40 years of age." *See* 29 U.S.C. § 631(a). Robinson's *in forma pauperis* motion reflects that he is currently thirty-three years old. (ECF No. at 5.) Accordingly, Robinson has no basis for an age discrimination claim under the ADEA. Documents attached to the Complaint also suggest that Robinson believes he was harassed because he was the most junior employee. That allegation also fails to support a claim under laws prohibiting employment discrimination.

## II.     STANDARD OF REVIEW

The Court will grant Robinson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   Conclusory allegations do not suffice.  *Id.*  This plausibility paradigm "applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted).  As Robinson is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Moreover, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted). This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

## III. DISCUSSION

### A. Robinson's Pleading Does Not Comply with the Federal Rules of Civil Procedure

Robinson's filing does not comply with Federal Rules of Civil Procedure 8 and 10. The purpose of these rules is to make clear to the Court and the defendants the factual basis for a plaintiff's claims so that the defendants can meaningfully respond to those claims. *See, e.g., Fabian v. St. Mary's Med. Ctr.*, No. Civ.A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (quotations omitted); *Young v. Centerville Clinic, Inc.*, No. Civ.A. 09-325, 2009 WL 4722820, at *3 (W.D. Pa. Dec. 2, 2009) ("The purpose of Rule 10 is to create clarity in pleadings, which allows a defendant and the Court to determine whether there are sufficient facts to support a claim entitling a plaintiff to relief."). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011) ("Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'a demand for the relief sought.'") (quoting Fed. R. Civ. P. 8(a)(2), (3)); *see also id*. ("Each averment must be 'simple, concise, and direct.'") (quoting Fed. R. Civ. P. 8(d)(1)). "This standard operates in tandem with that of Rule 10," which requires that a pleading contain a caption with the Court's name and the names of the parties, and that claims be listed in numbered paragraphs. *Fabian*, 2017 WL 3494219, at *3 (citing Fed. R. Civ. P. 10).

Here, Robinson has not pled any factual allegations in his Complaint. Instead, he relies entirely on exhibits, which total 339 pages, and which include duplicative emails and numerous

documents presented in a disorganized fashion.  By presenting his claims in this manner, Robinson has failed to comply with the relevant procedural rules, making it difficult for the Defendants to meaningfully respond to his pleading and for the Court to process his Complaint because it does not contain any allegations at all.  *See DiGenova v. Unite Here Local 274*, 673 F. App'x 258, 260 (3d Cir. 2016) (per curiam) ("The documents that DiGenova submitted as his amended complaint do not contain a 'short and plain statement' of any claim, Fed. R. Civ. P. 8(a)(2), and DiGenova's allegations are not 'simple, concise, and direct,' Fed. R. Civ. P. 8(d)(1)."); *Binsack v. Lackawanna Cty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (per curiam) ("[Plaintiff's] voluminous exhibits, do not, without the required 'short and plain statement,' communicate the nature of his claim, and would, in any event, be insufficient to satisfy Rule 8(a).").

Robinson will be given an opportunity to file an amended complaint that sets forth factual averments in numbered paragraphs to which the Defendants can respond as envisioned by the Federal Rules of Civil Procedure.  Robinson may use the Court's form complaint for filing an employment discrimination case if he chooses to do so and may attach any additional pages as necessary to articulate his claims.  He need not file all supporting documentation with any amended complaint and should not rely exclusively on exhibits to state the basis for his claims. *See Young v. Demehick*, 363 F. App'x 156, 158 (3d Cir. 2010) (per curiam) ("The District Court correctly stated that Young's submission of a multitude of documents in support of his complaint did not comply with its order to file an amended complaint").

### B. Failure to Exhaust Administrative Remedies

Despite the pleading problems noted above, the Court has done its best to review Robinson's submission to determine the basis for his claims and to guess at the claims he is

seeking to pursue. As noted above, Robinson's Complaint could be fairly construed as raising claims under Title VII that he was subjected to a hostile work environment based on his race, primarily as a result of the incidents with Stringer and Ressler, and that he was retaliated against for reporting those incidents.

A Title VII claimant may proceed to federal court only after exhausting administrative remedies. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). In general, that requires receipt of a right to sue letter from the EEOC. *Burgh*, 251 F.3d at 470. "Although failure to exhaust administrative remedies does not affect the District Court's jurisdiction, non-exhaustion constitutes a ground for dismissal for failure to state a claim on which relief may be granted . . . ." *Itiowe v. NBC Universal, Inc.*, 556 F. App'x 126, 128 (3d Cir. 2014) (per curiam) (internal citations omitted) (affirming dismissal under §1915(e)(2)(B)(ii) for failure to exhaust). Here, Robinson indicated in his Complaint that the EEOC has not issued a Notice of Right to Sue Letter. (Compl. at 6.) If so, he has not properly exhausted administrative remedies prior to bringing any Title VII claims.

### C. The Complaint Does Not State a Claim as Pled

Even leaving aside the exhaustion issue, Robinson's Complaint does not state a plausible employment discrimination claim. Title VII prohibits discrimination in employment based on, among other things, race and color. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)). "To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like

circumstances, and 5) the existence of *respondeat superior* liability." *Mandel*, 706 F.3d at 167. Furthermore, "Title VII imposes no general civility code" as it "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal quotations omitted).

Federal law also prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because he made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *E.E.O.C.*, 778 F.3d at 449. "A prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Id.* (quotations omitted). Claims under the PHRA "are governed by essentially the same legal standards" as the federal analogues. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016). Although a plaintiff need not establish a *prima facie* case to survive dismissal for failure to state a claim, he still must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotations omitted).

Here, Robinson's filing reflects his belief that he was subjected to a hostile work environment. But even assuming that the incidents described in Robinson's email could be considered severe and pervasive, it is not clear that these incidents related to Robinson's race. *See Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (per curiam) (explaining that "[t]he discrimination must be 'because of' the employee's protected status or activity" (quoting *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007)). It is also not clear how

12

Robinson was retaliated against, as it is not clear that he complained of conduct prohibited by relevant law, what adverse employment action was allegedly taken against him, or how any such adverse action was causally connected to his complaints. *See, e.g.*, *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two months between employee's request and termination was not unusually suggestive of retaliation). However, as it is possible that Robinson could explain a basis for his claims that would clarify those matters apart from relying on exhibits, he will be given an opportunity to file an amended complaint.

### D. Lack of Subject Matter Jurisdiction

To the extent Robinson's Complaint can be construed as raising only PHRA claims, he has not stated a basis for the Court's subject matter jurisdiction. The only independent basis for jurisdiction over those state law claims is 28 U.S.C. § 1332. Under section 1332, a district court can exercise subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Id.* Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). It is Robinson's burden to establish a basis for jurisdiction over his claims. *See id.* at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). A corporation is a citizen of the state in which it was incorporated as well as the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). "'The citizenship of partnerships and other unincorporated associations is determined by the citizenship of [their] partners or members.'" *Lincoln Ben. Life Co.*, 800 F.3d at 105 (quoting *Zambelli*, 592 F.3d at 420). A plaintiff may allege that an unincorporated association is not a citizen of plaintiff's state of citizenship as long as plaintiff has conducted a reasonable investigation into the matter. *Id.* at 107.

The Complaint does not allege the citizenship of the parties. As Robinson resides in Pennsylvania and was most recently employed in Pennsylvania, it appears as though he is a citizen of Pennsylvania. However, as the Complaint does not provide sufficient information about the Defendants' citizenship, it is not clear that the parties are diverse. Given this, the Complaint fails to establish the complete diversity required to exercise jurisdiction under § 1332(a).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Robinson leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice to amendment. An appropriate Order follows.

**BY THE COURT:**

  /s/ Juan R. Sánchez
**JUAN R. SÁNCHEZ, C.J.**